PROB 12C
(Rev.2011)

# United States District Court
## for
## Middle District of Tennessee

## Superseding Petition for Summons for Offender Under Supervision
## [Supersedes Petition Filed as Docket Entry No. 53]

Name of Offender: <u>Mark Elliot Key</u>　　　Case Number: <u>2:08-00003</u>

Name of Sentencing Judicial Officer: <u>Honorable Aleta A. Trauger, United States District Judge</u>

Date of Original Sentence: <u>January 26, 2009</u>

Original Offense: <u>18 U.S.C. § 922(g)(1) and 18 U.S.C. § 924, Felon In Possession of Firearm</u>

Original Sentence: <u>60 months' custody and 3 years' supervised release</u>

Type of Supervision: <u>Supervised release</u>　　　Date Supervision Commenced: <u>June 4, 2013</u>

Assistant U.S. Attorney: <u>Van Vincent</u>　　　Defense Attorney: <u>Sumter L. Camp</u>

## PETITIONING THE COURT

　　<u>X</u>　　To Consider Additional Violations/Information.
　　___　　To issue a Summons.
　　___　　To issue a Warrant.

**THE COURT ORDERS:**
☐ No Action
☐ The Issuance of a Warrant:
　　☐ Sealed Pending Warrant Execution
　　　(cc: U.S. Probation and U.S. Marshal only)
☐ The Issuance of a Summons.
☐ Other
☒ Consideration of Additional Violations/Information. *at Oct. 6, 2014 hearing*

I declare under penalty of perjury that the foregoing is true and correct. Respectfully submitted,

Considered this <u>25th</u> day of <u>September</u>, 2014, and made a part of the records in the above case.

_____
Aleta A. Trauger
U.S. District Judge

_____
Brad Bartels
U.S. Probation Officer

Place　　<u>Cookeville, TN</u>

Date　　<u>September 25, 2014</u>

## ALLEGED VIOLATIONS

The information provided in the previous petition, filed as docket entry No. 53, has been amended as follows:

<u>Violation No. 4</u> - has been amended to include an additional positive drug test.

The probation officer believes that the offender has violated the following condition(s) of supervision:

<u>Violation No.</u>   <u>Nature of Noncompliance</u>

1. **The defendant shall not commit another federal, state, or local crime.**
   On March 21, 2014, Mr. Key was arrested in Van Buren County, Tennessee, and charged with Driving Under the Influence, second offense. He was released later that day after making bond. Mr. Key met with Supervisory United States Probation Officer Britton Shelton on March 25, 2014, to discuss his arrest. He reported he was on his way back from his methadone treatment and was stopped at a road block being operated by the Tennessee Highway Patrol. When Mr. Key divulged he was on his way home from a methadone clinic he was asked to do a field sobriety test. When the probation officer asked why he would drive after taking a dose of methadone, Mr. Key reported that he "always" drives, even though he had an adult passenger in the car with him who could have been driving. He further reported that the methadone doesn't "kick in" right away and he is usually home before he might become impaired. This case is still pending in state court.

2. **The defendant shall not leave the judicial district without the permission of the Court or the probation officer.**
   On March 25, 2014, when Mr. Key was arrested, he was in Van Buren County, which is not part of the Middle District of Tennessee. When asked, during his meeting with the probation officer on March 25, he reported that he had been receiving methadone treatments from a clinic in Rossville, Georgia, for the past month and had been driving there each weekday to get his dose of methadone. He initially tried to debate that the travel was within the "region" of this judicial district, but soon admitted knowledge that he was out of the district without permission of the Court or the probation officer.

3. **The defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer.**
   At the time of his arrest on March 21, 2014, Mr. Key was accompanied by his girlfriend, Cynthia Addison, also known as Cynthia Denise Carr-Addison. Mr. Key acknowledged that Ms. Carr-Addison has a felony criminal record. She is currently on state parole and has multiple felony convictions. Mr. Key says the couple would like to get married and that Ms. Carr-Addison is doing good things with her life at this time. He was previously instructed to not associate with her because of the potential for trouble given their respective substance abuse and criminal histories.

4. **The defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substance, except as prescribed by a physician.**

Since October 15, 2013, Mr. Key has tested positive and/or admitted using illegal substances on six separate occasions.

| Date | Event |
|---|---|
| October 15, 2013 | tested positive for Valium and admitted use of Soma |
| October 22, 2013 | tested positive and admitted use of marijuana, Xanax, and Valium |
| April 30, 2014 | tested positive and admitted use of cocaine, Xanax, and Morphine |
| August 18, 2014 | admitted use of Subutex |
| August 27, 2014 | tested positive and admitted use of morphine; admitted use of Subutex and marijuana |
| September 11, 2014 | tested positive and admitted use of Subutex |

On October 15, 2013, Mr. Key tested positive for benzodiazepine. When questioned by the probation officer, he admitted to taking one Soma pill on or about October 12, 2013. He did not have an active prescription for Soma. Mr. Key refused to identify the individual who distributed the prescription pill to him. Once he learned the testing lab would identify what substances were present in his body, Mr. Key also admitted to taking Valium on or about October 12, 2013. Mr. Key asked the probation officer to discard the urine sample and allow him to return in two days, stating he would then produce a "clean" sample. The probation officer verbally reprimanded Mr. Key and instructed him to never ask the probation officer to discard or tamper with evidence. Mr. Key said he "messed up" but did not have time to attend substance abuse treatment, as was recommended by the probation officer. He asked the probation officer for another chance. The probation officer referred Mr. Key for substance abuse treatment at Plateau Mental Health in Cookeville, Tennessee.

On October 22, 2013, Mr. Key tested positive for benzodiazepine and tetrahydrocannabinol (THC). When questioned by the probation officer, he admitted to smoking Marijuana on October 21, 2013. Mr. Key originally admitted to taking Valium on or about October 18, 2013, but contradicted himself later by saying he had taken Xanax instead of Valium. Mr. Key did not have a prescription for either medication. The probation officer questioned him further and Mr. Key reported that both Xanax and Valium were the same to him, but he thought he had taken Xanax. The probation officer also discovered that Mr. Key had a prescription for Subutex, a medication used to treat opiate addiction, which was not previously disclosed to the probation officer. Mr. Key admitted to using the illegal substances while at work.

On April 30, 2014, Mr. Key tested positive for opiates, marijuana, cocaine, and benzodiazepines. When questioned by the probation officer, he originally denied using any illegal drugs. After further questioning by the probation officer, Mr. Key admitted to smoking marijuana possibly laced with cocaine, and consuming Morphine and Xanax. Mr. Key reported he did not have a valid prescription for the Morphine or Xanax.

On August 18, 2014, Mr. Key tested positive for buprenorphine. Mr. Key admitted to taking Subutex on or about August 15, 2014, without a valid prescription. Mr. Key also admitted to consuming Vitamin B12 to help defeat the drug test. He claimed the vitamin flushed his system while enhancing the color of the urine to make it appear less diluted. The laboratory was unable to confirm the use of buprenorphine and listed the urine sample as invalid due to dilution.

On August 27, 2014, Mr. Key tested positive for opiates and buprenorphine. Mr. Key admitted to taking Subutex without a valid prescription on or about August 25, 2014. He also admitted to taking Morphine without a valid prescription as well as smoking "one puff"

of marijuana that same date. The laboratory confirmed the urine sample was positive for opiates.

On September 10, 2014, the probation officer attempted to contact Mr. Key at his residence but was unsuccessful. When the probation officer called him, Mr. Key asked the probation officer if he had a "hard on" for him since the probation officer was always "riding" his "ass." Mr. Key said he might do better on supervision if the probation officer would give him room to breathe. The probation officer reprimanded Mr. Key for his comments and explained he was trying to help Mr. Key fight his drug addiction. The probation officer stated he was responsible for supervising Mr. Key which entailed ensuring compliance with the conditions of his supervised release. The probation officer asked Mr. Key if he had used any illegal substance since his last drug test and he originally denied, but later admitted to consuming Subutex without a prescription earlier in the day. The probation officer asked Mr. Key to report to his office on September 11, 2014, at 8:00 a.m. for a drug test.

On September 11, 2014, Mr. Key reported to the Cookeville office and tested positive for Subutex. Mr. Key admitted to taking Subutex without a valid prescription on September 10, 2014. He stated he was stressed and felt like he was letting "everyone" down. He told the probation officer he knew he was a drug addict but was "giving up" because it was too hard to be sober.

**Compliance with Supervision Conditions and Prior Interventions:**
Mark Key began his three year term of supervised release on June 4, 2013, and is due to terminate supervision on June 3, 2016. He lives with his mother in Livingston, Tennessee. He is currently employed in the housekeeping department at the Clarion Inn in Cookeville, Tennessee.

On July 23, 2013, Mr. Key attended a substance abuse assessment at Plateau Mental Health in Cookeville, Tennessee. It was determined that Mr. Key would not benefit from substance abuse treatment at that time. The probation officer was informed that the determination to not recommend substance abuse treatment was based on Mr. Key's attitude towards treatment rather than his actual need for treatment.

A report was submitted to the Court on October 22, 2013, regarding Mr. Key testing positive for benzodiazepine on October 15, 2013. The probation officer issued a verbal reprimand to Mr. Key for violating the conditions of his supervision, and he was re-instructed not to use any illegal substance. Mr. Key was again referred for substance abuse treatment at Plateau Mental Health, and he started outpatient treatment on October 31, 2013. The Court ordered no action on October 22, 2013.

On October 31, 2013, a second report was submitted to the Court reporting Mr. Key additional positive drug tests Mr. Key was verbally reprimanded and re-instructed to not use any illegal substances or medications not prescribed to him. H was warned of the possible legal and personal ramifications for such ongoing use. Your Honor ordered no action at that time in order for Mr. Key to take advantage of ongoing substance abuse treatment.

A third report was submitted on April 3, 2014, regarding Mr. Key's arrest for Driving Under the Influence. During this incident, Mr. Key left the Middle District of Tennessee, without the knowledge of the probation officer, to visit a methadone clinic in North Georgia. Following this arrest, it was suggested that Mr. Key strongly consider inpatient substance abuse treatment, which could be done at New Leaf Recovery Center in Cookeville, Tennessee. Mr. Key stated he did not have time to do inpatient treatment as he was enrolled in school and looking for work. When asked what his school schedule was, he noted he was not in classes at that time, but would be soon.

When asked about his methadone treatment, Mr. Key agreed it would be best to return to treatment in Nashville. While it would require him to drive in each day, it would keep him within the Middle District of

Tennessee. He adamantly denied getting methadone from two clinics simultaneously, noting there are parameters in place to prevent simultaneous treatment. He reported paying $82 per week for his methadone, which he pays for out of a trust fund. He wanted to attend treatment in Georgia because they allow him to take home his weekend doses, as long as he had an approved lock box for the Saturday and Sunday dose. The Nashville methadone clinic requires participants to drive in each day to get the methadone. Mr. Key was referred to Plateau Mental Health in Cookeville, Tennessee for substance abuse treatment once per week.

As a result of his positive drug test on April 30, 2014, Mr. Key was verbally reprimanded and again instructed not to use any illegal substances or medications not prescribed to him. Mr. Key understands that possession and use of a any drug not prescribed to him violates the terms of his supervised release. The probation officer contacted New Leaf Recovery Center in Cookeville, Tennessee, in an effort to get Mr. Key admitted to the 28-day inpatient substance abuse treatment program, but was told Mr. Key was not eligible due to the amount of methadone he was consuming. Mr. Key was taking 100mg of methadone daily, and New Leaf would not admit to the inpatient program unless consumption is 30mg or less. The probation officer contacted the Bureau of Prisons regarding possible designation to Diersen Residential Reentry Center in Nashville, Tennessee, but was told their next available report date was in November 2014. Mr. Key told the probation officer he would comply with any recommendation so long as he was able to get his "dose" of methadone, but there were no inpatient treatment facilities that will allow methadone use while participating in the treatment program.

A petition was submitted to the Court on May 7, 2014, reporting Mr. Key's continued drug use. As a result, a warrant was issued, and Mr. Key was subsequently arrested on May 15, 2014. Mr. Key was detained until May 22, 2014, when he reported for 28-day inpatient substance abuse treatment at the New Leaf Recovery Center. Mr. Key successfully completed the inpatient substance abuse treatment program on June 12, 2014. His revocation hearing was originally scheduled for June 25, 2014, but was later continued to October 6, 2014, to allow Mr. Key time to complete treatment and prove he was able to remain drug free.

Upon release from New Leaf, Mr. Key obtained medical insurance and was successfully enrolled in the Intensive Outpatient Program (IOP) at Bradford Health Services in Cookeville, Tennessee. Mr. Key began IOP on June 28, 2014. He actively participated in the program until August 2014, when Mr. Key stated he was frustrated with how he was treated at Bradford. He told the probation officer he felt Bradford was "milking" his insurance and thought he no longer needed the intensive treatment. The probation officer encouraged Mr. Key to continue participating in treatment and reminded him of the positive progress he had made since he started IOP.

As a result of Mr. Key's positive drug test on August 18, 2014, the probation officer questioned Mr. Key about his belief he no longer needed intensive treatment. Mr. Key admitted he was stressed and consumed Subutex to eliminate his craving for illegal drugs. He spoke to the probation officer about obtaining a prescription for Subutex, and stated he had an appointment scheduled for the following day to speak to a physician. The probation officer cautioned Mr. Key and reminded him about how he previously used Subutex before switching to methadone due to an increasing need for more powerful illegal drugs. The probation officer strongly discouraged Mr. Key from obtaining the prescription for Subutex.

On August 27, 2014, the probation officer met with Mr. Key and clinical staff at Bradford Mental Health Services. During the conversation, Mr. Key admitted to testing positive for benzodiazepines on August 11, 2014, while attending treatment at Bradford. Mr. Key said he did not notify the probation officer because he did not want to return to prison. He admitted he was struggling with his substance abuse addiction and wanted to "do right." Mr. Key said he was afraid of letting people down, but wanted additional treatment. Mr. Key's counselor, Amanda Lewis, told Mr. Key that he could attend inpatient substance abuse treatment at a Bradford facility. Mr. Key said he was "messed up" when he attend inpatient substance abuse treatment at New Leaf Recovery Center, and he felt attending a second time would be beneficial. The probation officer

commended Mr. Key for his decision to seek additional treatment, and encouraged him to fully participate in the inpatient substance abuse treatment. On August 28, 2014, Mr. Key was admitted in the 28-day inpatient substance abuse program at Bradford Health Services in Warrior, Alabama. A petition was submitted to the court on September 3, 2014, reporting Mr. Key's positive drug tests and admission to the inpatient substance abuse program at Bradford. The court ordered the additional violations would be considered at the revocation hearing on October 6, 2014.

On September 8, 2014, Mr. Key called the probation officer stating he was withdrawing himself from the inpatient substance abuse program at Bradford. Mr. Key said he planned to return to intensive outpatient treatment at Bradford Health Services in Cookeville, Tennessee. The probation officer strongly discouraged Mr. Key from withdrawing and stressed the importance of actively participating in the program. Mr. Key said he was "clean" and no longer wanted to be there. The probation officer again explained the necessity for Mr. Key to complete treatment in an effort to help him overcome his drug addiction. Mr. Key said he understood the consequences of his decision, but he wanted to return home so he could work and be around family. The probation officer encouraged Mr. Key to reconsider before withdrawing, but if he decided to leave, the probation officer asked Mr. Key to call him upon returning to Livingston, Tennessee.

As a result of the positive drug test on September 11, 2014, the probation officer expressed concerns to Mr. Key about his continued/ongoing drug use. The probation officer noted that Mr. Key continues to use drugs despite a variety of treatment efforts. Mr. Key was reminded of the conversation on September 8, 2014, when the probation officer strongly discouraged Mr. Key from withdrawing from inpatient substance abuse treatment. Mr. Key said he understood and was willing to accept the consequences for his actions.

**Update of Offender Characteristics:**
There is no additional information relevant to this section that has not already been provided in this petition.

**U.S. Probation Officer Recommendation:**
It is respectfully recommended that the violation behavior outlined above be considered at the revocation hearing scheduled for October 6, 2014. This matter has been reported to Assistant U.S. Attorney Van Vincent, who concurs with the recommendation.

Approved: _____
Britton Shelton
Supervisory U.S. Probation Officer

## SENTENCING RECOMMENDATION
## UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE
## UNITED STATES V. MARK KEY, CASE NO. 2:08-00003

**GRADE OF VIOLATION:** C
**CRIMINAL HISTORY:** VI

**ORIGINAL OFFENSE DATE:** POST APRIL 30, 2003   PROTECT ACT PROVISIONS

| | Statutory Provisions | Guideline Provisions | Recommended Sentence |
|---|---|---|---|
| CUSTODY: | **2 years (Class C Felony)** *18 U.S.C. § 3583(e)(3)* | 8-14 months *U.S.S.G. § 7B1.4(a)* | **12 months** |
| SUPERVISED RELEASE: | **3 years less any term of imprisonment** *18 U.S.C. § 3583(h)* | 1-3 years *U.S.S.G. § 5D1.2(a)(2)* | **None** |

18 U.S.C. § 3583(g)(4) If the defendant, as a part of drug testing, tests positive for illegal controlled substances more than 3 times over the course of 1 year, the court shall revoke the term of supervised release and require the defendant to serve a term of imprisonment not to exceed the maximum term of imprisonment authorized under subsection (e)(3).

18 U.S.C. § 3583(e)(3) The Court may revoke a term of supervised release and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on post release supervision, if the Court finds by a preponderance of the evidence that the offender violated a condition of supervised release. When a term of supervised release is revoked and the defendant is required to serve a term of imprisonment that is less than the maximum term of imprisonment authorized under subsection (e)(3), the Court may include a requirement that the defendant be placed on a term of supervised release after imprisonment. The length of such a term of supervised release shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release, in accordance with 18 U.S.C. § 3583(h).

**Guideline Policy Statements:** Upon a finding of a Grade C violation, the Court may (A) revoke probation or supervised release; or (B) extend the term of probation or supervised release and/or modify the conditions of supervision. U.S.S.G. § 7B1.3(a)(2).

Respectfully Submitted,

_____
Brad Bartels
U.S. Probation Officer

Approved: _____
Britton Shelton
Supervisory U.S. Probation Officer

# VIOLATION WORKSHEET

1. **Defendant** Mark Elliot Key

2. **Docket Number** *(Year-Sequence-Defendant No.)* 0650 2:08CR00003 - 1

3. **District/Office** Middle District of Tennessee

4. **Original Sentence Date**  01 / 26 / 2009
                                   month  day  year

5. **Original District/Office** *(if different than above)*

6. **Original Docket Number** *(Year-Sequence-Defendant No.)*

7. **List each violation and determine the applicable grade (see §7B1.1):**

| Violation(s) | Grade |
|---|---|
| Shall not commit another local, state, or federal crime | C |
| Shall not leave the jurisdictional district without permission | C |
| Shall not have contact with criminal associations | C |
| Shall refrain from any controlled substance | C |

8. **Most Serious Grade of Violation** *(see §7B1.1(b))* — C

9. **Criminal History Category** *(see §7B1.4(a))* — VI

10. **Range of Imprisonment** *(see §7B1.4(a))* — 8-14 months

11. **Sentencing Options for Grade B and C Violations Only** *(Check the appropriate box):*

☐ (a) If the minimum term of imprisonment determined under §7B1.4 (Term of Imprisonment) is at least one month but not more than six months, §7B1.3(c)(1) provides sentencing options to imprisonment.

☒ (b) If the minimum term of imprisonment determined under §7B1.4 (Term of Imprisonment) is more than six months but not more than ten months, §7B1.3(c)(2) provides sentencing options to imprisonment.

☐ (c) If the minimum term of imprisonment determined under §7B1.4 (Term of Imprisonment) is more than ten months, no sentencing options to imprisonment are available.

Mail documents to: United States Sentencing Commission
Ste 2-500, South Lobby, One Columbus Cir, NE
Washington, DC 20002-8002

**Defendant** Mark Elliot Key

12. **Unsatisfied Conditions of Original Sentence**

    List any restitution, fine, community confinement, home detention. or intermittent confinement previously imposed in connection with the sentence for which revocation is ordered that remains unpaid or unserved at the time of revocation (see §7B1.3(d)):

    Restitution($) _____    Community Confinement _____

    Fine($)       _____    Home Detention          _____

    Other         _____    Intermittent Confinement _____

13. **Supervised Release**

    If probation is to be revoked, determine the length, if any, of the term of supervised release according to the provisions of §§5D1.1-1.3 (see §§7B1.3(g)(1)).

    Term: 1 _____ to 3 _____ years

    If supervised release is revoked and the term of imprisonment imposed is less than the maximum term of imprisonment imposable upon revocation, the defendant may, to the extent permitted by law, be ordered to recommence supervised release upon release from imprisonment (see 18 U.S.C. §3583(e) and §7B1.3(g)(2)).

    Period of supervised release to be served following release from _____
    imprisonment:

14. **Departure**

    List aggravating and mitigating factors that may warrant a
    sentence outside the applicable range of Imprisonment:

15. **Official Detention Adjustment** (see §7B1.3(e)): _____ months _____ days

Mail documents to: United States Sentencing Commission
Ste 2-500, South Lobby, One Columbus Cir, NE
Washington, DC 20002-8002